## 11602

### STATE v. COLEMAN

#### (125 S. E., 130)

1. BANKS AND BANKING—EVIDENCE AS TO DEMAND FOR PAYMENT OF NOTE GIVEN FOR AMOUNT OF SHORTAGE HELD PROPERLY EXCLUDED, IN PROSECUTION FOR BREACH OF TRUST.—In prosecution of cashier and vice president of bank for breach of trust with fraudulent intent, exclusion of evidence as to demand made by receiver of bank for payment of note given by defendant for amount of his shortage, *held* not error, evidence being irrelevant.

2  WITNESSES—REFUSAL TO PERMIT DEFENDANT TO TESTIFY AS TO EVI-
   DENCE INTRODUCED TO CONTRADICT HIS. TESTIMONY HELD NOT ERROR.
   —In prosecution of bank officer for breach of trust, in which books
   of a corporation were introduced to contradict defendant's testi-
   mony that he had lent money to such corporation, refusal to permit
   defendant to testify in reply *held* proper; the introduction of the
   books being strictly in reply.

3. BANKS AND BANKING—IN PROSECUTION OF BANK OFFICER FOR
   BREACH OF TRUST WITH FRAUDULENT INTENT, EVIDENCE HELD TO
   TAKE CASE TO JURY.—In prosecution of bank cashier and vice presi-
   dent for breach of trust with fraudulent intent, in which it was
   claimed that defendant appropriated bank funds, evidence *held*
   sufficient for submission of case to jury.

Before RICE, J., BARNWELL, June, 1923. Affirmed.

A. W. Coleman was indicted for breach of trust with fraudulent intent and upon conviction appeals.

The defendant was charged with having fraudulently appropriated to his own use the funds of the bank of which he was cashier and vice president. The bank's president testified that the defendant had charge of the bank up to the time that it closed its doors. The receiver's bookkeeper testified that when bank was taken over by receiver there was a cash shortage, that there was a shortage of a certain amount represented by missing notes, and that there was a shortage of a certain amount caused by delivery of bills of lading covering shipments, and that no entries had been made showing bank's receipt of amounts. Witnesses, shown by bank records to have borrowed money, denied that they had borrowed money from bank, or that they had executed notes to bank. Written statement left by defendant admitted shortage.

*Mr. J. O. Patterson, Jr.,* for appellant cites: *Breach of Trust with fraudulent intent:* 2 Code 1922, Sec. 43; 21 S. C., 356; 2 McC. L., 161; 25 S. C., 147.

*Mr. R .L. Gunter, Solicitor,* for the State, cites: *Relevancy of testimony largely in discretion of the Court:* 60 S. C., 67; 75 S. C., 264; 85 S. C., 273.

November 11, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant's statement of his case is as follows:

"The appellant was prosecuted for breach of trust with fraudulent intent. He was cashier and vice president of the Farmers' & Merchants' Bank of Dunbarton, and left a memorandum, together with his promissory note, showing in what accounts he was short. The bank retained the promissory note left by the appellant, which was turned over to the receiver of the bank, and upon the trial, Judge Rice refused to allow the appellant to introduce in evidence the demand by the receiver on the appellant for payment of said note. At the close of the evidence, the State offered P. J. Hiers to prove by books of Hiers & Coleman that the loans testified by Coleman to have been made, by him to Hiers & Coleman were not so made, when in fact the books showed the entry of said loans, and refused to allow the appellant to go upon the stand and testify in reply, or to rebut the new evidence of P. J. Hiers, from which rulings the appellant has appealed."

I. The appellant argues his first and second exceptions together. They complain that his Honor excluded from the evidence a demand made by the receiver of the bank for the payment of the note that was given by the appellant for the amount of his shortage. There was certainly no error here. The evidence was totally irrelevant. The nature of the transaction was fixed at the time of the transaction. If the appellant had paid the money, instead of giving his note for money he had already taken, it could not change the nature of the original taking. The bank is entitled to a return of its money, whether rightfully taken or by a fraudulent breach of trust. Neither the bank itself nor its receiver has a right to pardon or expurgate the crime, if a crime had been committed.

II. When the appellant was on the stand, he said that he had lent a part of the money to Hiers & Coleman, a mercantile corporation in which he had been a stockholder; that he had transferred his stock to his wife; that he felt morally bound for these loans, and had included them in his note. Hiers, the other stockholder, went on the stand and denied that Hiers & Coleman had received the money, and stated that the books of Hiers & Coleman, kept by the appellant, did not show that it had received the money. The books of Hiers & Coleman were then introduced in evidence. The defendant then claimed that this was new matter, and claimed the right to go on the stand, in reply to this new matter. This request was refused. His Honor refused it, on the ground that the evidence was strictly in reply. There was no error here.

The defendant said:

"I was vice president and cashier of the bank, and as such I loaned that money to Hiers & Coleman."

Hiers said:

"You did not; and here are the books kept by you, and they show that we did not get the money."

That was strictly in reply. Besides this, the books themselves were in evidence, and the jury could see the entries that could have been pointed out by appellant's cousel in argument.

III. The last assignment of error is that his Honor refused to direct a verdict for the defendant. The evidence of fraudulent breach of trust is abundant, and his Honor made no mistake in refusing the motion.

The judgment appealed from is affirmed, and the appeal is dismissed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.